IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-02646-RBJ

BRUCE FRANK and KATHLEEN FRANK,

      Plaintiffs,

v.

WELLS FARGO BANK N.A.,

      Defendant.

---

## ORDER

---

    This matter is before the Court on defendant's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 11].  For the reasons below, defendant's motion is GRANTED.

## I.    FACTS

    Plaintiffs Bruce and Kathleen Frank are the putative owners of the home located at 10295 S. Dowling Court in Highlands Ranch, Colorado.  ECF No. 8 ¶1 (Amended Complaint). Plaintiffs purchased this property in July of 2006, signing a note and deed of trust in favor of defendant Wells Fargo Bank, N.A. ("Wells Fargo") in August of that year.  *Id.* ¶¶2–4.  Plaintiffs allege that they "dutifully made their mortgage payments" to defendant until an "economic hardship" rendered them unable to continue making their payments.  *Id.* ¶5.  Plaintiffs allege that after this occurred they turned in numerous applications to Wells Fargo to modify their loan, and that the company did not properly review them.  *Id.* ¶¶6–7.

    Plaintiffs claim that as they turned in these applications, Wells Fargo attempted many times to foreclose on their property.  *See id.* ¶8.  But each time defendant tried to foreclose, it

1

apparently failed for unspecified reasons.  *Id.*  That was until Wells Fargo filed a Notice of

Election and Demand with the Douglas County Public Trustee on June 2, 2014.  *See id.*

Plaintiffs allege that after that filing they attempted to prevent foreclosure by completing their

most recent loan modification application.  *Id.* ¶9.  They claim that in April of 2015 Wells Fargo

recognized that the Franks had completed this application for a loan modification.  *Id.* ¶10.

However, later that month on April 21, 2015 Wells Fargo allegedly notified plaintiffs that their

application had been denied because defendant's review of their application returned a negative

net present value ("NPV")—a formula based on a borrower's income and property value that

defendant uses to approve loan modifications, with a positive NPV resulting in approval and a

negative resulting in denial.  *See id.* ¶¶11–12.

    Plaintiffs contend that defendant's letter denying their application stated that defendant

had valued plaintiffs' property at $1,700,000.00.  *Id.* ¶13.  They assert that this value was

erroneous because it was "greatly inflated over the actual value of the property."  *Id.*  Based on

this alleged error, plaintiffs appealed Wells Fargo's decision denying their loan modification,

arguing that their house was actually *less* valuable than what Wells Fargo had found.  *See id.*

¶14.  To prove this assertion, plaintiffs provided defendant with a competitive market analysis of

their property reflecting a $1,475,000.00 valuation.  *Id.*  Defendant allegedly responded to

plaintiffs' appeal in a May 27, 2015 letter in which it stated that if defendant could confirm

plaintiffs' lower valuation as accurate, its review of plaintiffs' appeal might result in a positive

NPV.  *Id.* ¶15.  Defendant's letter apparently requested that plaintiffs pay $200.00 within fifteen

days for defendant to conduct an appraisal to attempt to confirm this valuation.  *Id.*; ECF No. 8-1

(Wells Fargo Request Letter).

Plaintiffs allege that they paid defendant the requested amount and then waited for Wells Fargo to contact them. ECF No. 8 ¶¶16–17.  They contend that they waited for Wells Fargo to contact them because they expected that defendant would need access to the interior of their home to conduct the appraisal.  *Id.*  But defendant apparently never reached out to plaintiffs about gaining such access.  *Id.* ¶17.  Instead, in a letter dated July 23, 2015 defendant informed plaintiffs that after conducting the appraisal it had upheld its denial of plaintiffs' application.  *Id.* ¶18.  As part of its letter denying plaintiffs' appeal, defendant included an "Exterior-Only Inspection Residential Appraisal Report" reflecting a valuation of more than $2,000,000.00 for plaintiffs' property.  *Id.* ¶18.  Plaintiffs contend that this report "was nothing more than a broker's price opinion created through comparisons to properties in the area."  *Id.* ¶19.  It was not, plaintiffs allege, the kind of appraisal "they were led to believe they would receive that would provide a reliable basis for the value of the property to be used in [defendant's] NPV analysis."  *Id.*

Upset by defendant's affirming its denial of their application, plaintiffs allegedly contacted defendant and its foreclosure counsel and informed them of plaintiffs' objection that defendant had not conducted a "real appraisal[.]"  *Id.* ¶20.  Defendant and its counsel apparently did not agree with plaintiffs' characterization of events and refused plaintiffs' demand to order yet another appraisal on the property.  *Id.* ¶21.  After defendant declined to conduct that new appraisal, plaintiffs submitted a Notice of Error ("NOE") to defendant under 12 C.F.R. §1024.35 on September 16, 2015.  *Id.*  Plaintiffs allege that they submitted this NOE "seven days before the scheduled [foreclosure] sale date of September 23, 2015."  *Id.*  Despite allegedly receiving the NOE, defendant purportedly refused to postpone the foreclosure sale of plaintiffs' property.  *Id.* ¶22.  Defendant's refusal to postpone the sale, plaintiffs contend, violated a Consumer

Financial Protection Bureau's ("CFPB") requirement that a servicer review and respond to a borrower's NOE allegations before the foreclosure sale if the servicer receives the NOE at least seven days before the sale. *Id*. (referencing 12 C.F.R. § 1024.35(e)(3)(i)(B)). Defendants nevertheless went through with the foreclosure sale on September 23, 2015. *Id*. ¶23. At the sale, Wells Fargo purchased plaintiffs' property. *Id*.

On November 4, 2015 plaintiffs filed suit against defendant in the Douglas County, Colorado District Court. ECF No. 1-2 at 5. Defendant removed the action to this Court on December 7, 2015. ECF No. 1. Plaintiffs amended their complaint the next day on December 8, 2015. ECF No. 8. In that Amended Complaint, plaintiffs allege: (1) that defendant violated CFPB regulations concerning mandatory procedures a servicer must take before a foreclosure sale after receiving an NOE seven days before that sale; and (2) that defendant falsely represented to plaintiffs the nature of the appraisal they planned to conduct as part of plaintiffs' appeal. *See* ECF No. 8 ¶¶24–36. Plaintiffs also seek (3) a determination of their interest in the property at issue, as well as (4) two forms of injunctive relief: (i) a restraining order preventing any interested party from filing a Forcible Entry and Detainer action; and (ii) a restraining order preventing defendant from conveying the property to a third party. *See id*. ¶¶37–44. On December 23, 2015 defendant filed a motion to dismiss plaintiffs' Amended Complaint. ECF No. 11. Defendant's motion is the subject of this Order.

## II.     STANDARDS OF REVIEW

### A.  **Rule 12(b)(6) Motion to Dismiss.**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal,* 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly,* 550 U.S. at 556; *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

In general, "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010)).  As the Tenth Circuit has noted, however, "[t]here are exceptions to this restriction on what the court can consider [in deciding a motion to dismiss], but they are quite limited: (1) documents that the complaint incorporates by reference" such as exhibits to a complaint; "(2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity . . . and (3) matters of which a court may take judicial notice[.]" *Id.* (internal quotation marks and citations omitted).

B. **Rule 9(b) Fraud Claims.**

Federal Rule of Civil Procedure 9(b)'s purpose is "to afford defendant fair notice of plaintiff's claims and factual ground upon which [they] are based . . . ." *See Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)). The rule states that when a party "alleg[es] fraud or mistake, [that] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind[,]" however, "may be alleged generally." *Id.* The Tenth Circuit has construed this Rule to require "a complaint alleging fraud 'to set forth the time, place and contents of the false representations, the identity of the party making the false statements and the consequences thereof.'" *Koch*, 203 F.3d at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991)).

## III.    ANALYSIS

A. __Plaintiffs' First Claim for Relief for Damages under 12 U.S.C. §2605(f).__

Defendant first seeks to dismiss plaintiffs' claim for damages for violations of the Real Estate Settlement Procedures Act ("RESPA"). ECF No. 11 at 2–4; ECF No. 8 ¶¶24–29; *see Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (explaining that 12 U.S.C. § 2605(f) allows borrowers to hold loan servicers liable for actual damages stemming from the servicer's violation of RESPA regulations). In that claim, plaintiffs allege that defendant violated 12 C.F.R. § 1024.35(e)(3)(i)(B)—a relatively new and sparsely-discussed CFPB regulation under RESPA that requires a servicer to respond to a borrower's NOE with certain documentation before the foreclosure sale if the borrower asserts the error more than seven (7)

days beforehand.  ECF No. 8 ¶¶24–29 (citing 12 C.F.R. § 1024.35(e)(3)(i)(B)); *see Guccione v.*

*JPMorgan Chase Bank, N.A.*, No. 3:14-CV-04587 LB, 2015 WL 1968114, at *8 (N.D. Cal. May

1, 2015) (acknowledging the "newness of [12 C.F.R. § 1024.35(e)] and the relative lack of

authority interpreting it").

      Plaintiffs allege that 12 C.F.R. § 1024.35(e)(3)(i)(B) governed defendant's response to

their NOE because they sent defendant an NOE on September 16, 2015—exactly seven days

before the scheduled foreclosure sale date of September 23, 2015.  *Id.* at ¶21.  Plaintiffs go on to

assert that defendant failed to review and respond to the NOE before the sale, and that it refused

to otherwise postpone the foreclosure sale as well, thus violating RESPA.  *Id.*  Defendant

counters that plaintiffs cannot maintain a claim under 12 U.S.C. § 2605(f) for RESPA violations

for two reason.  First, defendant raises a timing issue.  It argues that plaintiffs misstate the law on

when 12 C.F.R. § 1024.35(e)(3)(i)(B) applies, and that defendant did not violate RESPA because

12 C.F.R. § 1024.35(e)(3)(i)(B) did not govern its response to plaintiffs' NOE.  *See* ECF No. 11

at 3 (citing 12 C.F.R. § 1024.35(f)(2)).  Second, defendant argues that plaintiffs were not entitled

to the second appeal of their loan modification application under RESPA and therefore cannot

establish a violation of that law.  *See* ECF No. 11 at 4 (citing 12 C.F.R. § 1024.41(h)(4).  I agree

with defendant's first argument for dismissal but not with its second.

      **1.**   **Applicability of 12 C.F.R. § 1024.35(e)(3)(i)(B).**

      Plaintiffs allege that they submitted their NOE on September 16, 2013, which they claim

was exactly seven days before the scheduled foreclosure sale on September 23, 2013.  *See* 12

C.F.R. § 1024.35(f)(2); ECF No. 8 ¶21.  From this allegation, I agree with defendant that it was

not subject to the pre-foreclosure "review and respond" regulation found at 12 C.F.R. §

1024.35(e)(3)(i)(B).  Rather, as the plain language of 12 C.F.R. § 1024.35(f)(2) makes clear, a

servicer "is *not* required to comply with the requirements of *paragraph[]* . . . *(e)* of this section . . . if the servicer receives [the NOE] . . . *seven* or fewer days before a foreclosure sale." *See* 12 C.F.R. § 1024.35(f)(2) (emphasis added); *see also* 12 C.F.R. § 1024.35(e)(3)(i)(B) (explaining the "review and response" requirement but noting that it applies "[e]xcept as provided in *paragraphs (f)* and (g) of this section") (emphasis added). Accordingly, I find that 12 C.F.R. § 1024.35(f)(2) applied to defendant's response, whereas 12 C.F.R. § 1024.35(e)(3)(i)(B) did not. Defendant did not therefore violate RESPA by failing to adhere to the pre-foreclosure requirements within 12 C.F.R. § 1024.35(e)(3)(i)(B).[1] *See id*.

Plaintiffs nevertheless attempt to save their claim by arguing that 12 C.F.R. § 1024.35(e)(3)(i)(B) applies because what they meant when they alleged in their Amended Complaint that they submitted the NOE "seven days" before the foreclosure sale was seven "*calendar days*, rather than 24 hour periods." ECF No. 14 at 3 (emphasis in original). Plaintiffs then go on to contend that, in any event, if their claim is allowed to go forward they will argue that "computation of days by 24 hour periods is the proper way to determine days because a foreclosure sale occurs at a specific time of day on the schedules dale date." *Id*.

While plaintiffs appear to want to have their cake and eat it too, as defendant correctly points out, the definition section within the relevant "mortgage servicing" subsection of RESPA

---

[1] Plaintiffs allege that they *submitted* their NOE on September 16, 2013 and not that defendant *received* it on that date. The latter date, however, is the appropriate date to use in calculating days under 12 C.F.R. § 1024.35(e)(3)(i)(B). *See* 12 C.F.R. § 1024.35(f)(2) ("A servicer is not required to comply with the requirements of paragraphs (d) and (e) of this section . . . if the servicer *receives* the applicable notice of an error seven or fewer days before a foreclosure sale.") (emphasis added). Nevertheless, even if the Court considers the exhibit plaintiffs attach to their Response, which purports to show that defendant *received* the NOE on September 16, 2013, plaintiffs still allege a seven-day gap between receipt and foreclosure. *See* ECF No. 14 at 4; ECF No. 14 at 4-1 (USPS tracking information). 12 C.F.R. § 1024.35(e)(3)(i)(B) still does not therefore apply. *See* 12 C.F.R. § 1024.35(f)(2); *see also Gee*, 627 F.3d at 1186 (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)) (stating that a court can consider a document outside the complaint on a motion to dismiss if it is central to the plaintiff's claim and if the parties do not dispute its authenticity).

8

specifically states that a "[d]ay means calendar day."  ECF No. 19 at 2 (citing 12 C.F.R. §

1024.31).  Therefore, even taking plaintiffs at their word that they really meant *calendar* days

when they alleged they submitted their NOE "seven days" before the foreclosure sale, plaintiffs'

NOE still triggered the requirements of 12 C.F.R. § 1024.35(f)(2) and not those contained

within 12 C.F.R. § 1024.35(e)(3)(i)(B).[2]

Having concluded that 12 C.F.R. § 1024.35(f)(2) governed defendant's response to

plaintiffs' NOE, I note that this regulation still required defendant to "make a good faith attempt

to respond to the borrower, orally or in writing, and either correct the error or state the reason

the servicer has determined that no error has occurred."  *See* 12 C.F.R. § 1024.35(f)(2).

Nevertheless, as defendant correctly argues, plaintiffs have failed to allege any facts in their

complaint that defendant did not comply with that "good faith" standard.  *See* ECF No. 8; ECF

No. 11 at 4; *Twombly,* 550 U.S. at 556 (requiring that a plaintiff allege sufficient facts to

support a plausible claim in order to survive a motion to dismiss).

The only RESPA violations plaintiffs contend defendant committed are: (1) that

defendant did not comply with 12 C.F.R. § 1024.35(e)(3)(i)(B)'s pre-sale response deadline; (2)

that defendant did not meet its obligation to provide all relevant documentation pertaining to its

decision before the foreclosure sale; and (3) that defendant did not otherwise postpone or re-

schedule the foreclosure sale.  ECF No. 8 ¶¶22–23, 26–27.

Unfortunately for plaintiffs, the regulation that I find did in fact govern defendant's

response to their NOE—12 C.F.R. § 1024.35(f)(2)—contains no such obligations.  *See* 12

C.F.R. § 1024.35(f)(2) ("[A] servicer shall make a good faith attempt to respond to the

borrower, orally or in writing, and either correct the error or state the reason the servicer has

---

[2] Plaintiffs argue in their Response that they should be allowed leave to amend their complaint to correct
this calendar day versus 24-hour period error.  ECF No. 14 at 4.  The Court denies this request because, as
discussed *supra*, this error makes no difference in this case.

determined that no error has occurred.").  Accordingly, I conclude that defendant's alleged

failure to comply with the obligations contained within 12 C.F.R. § 1024.35(e)(3)(i)(B) does not

establish any basis that defendant breached its duty of "good faith" under 12 C.F.R. §

1024.35(f)(2).  Plaintiffs' RESPA claim is therefore dismissed.

### 2.  **12 C.F.R. § 1024.41(h)(4) and Multiple Appeals.**

Even though I agree with defendant's first argument for dismissal, I write to explain why

I find defendant's second argument wanting.  Defendant alternatively seeks dismissal of

plaintiffs' RESPA claim because it contends that plaintiffs did not have the right to a second

appeal of their loan modification application.  *See* ECF No. 11 at 4 (citing 12 C.F.R. §

1024.41(h)(4)).  Defendant contends that because plaintiffs had no right to appeal defendant's

July 2015 decision affirming its earlier April 2015 denial of plaintiffs' loan modification

application, defendant did not have to respond to plaintiffs' September 2015 NOE at all.  *See*

ECF No. 11 at 4.  Thus, as defendant's argument goes, plaintiffs cannot establish a RESPA

violation based on any alleged failure by defendant to comply with the regulations pertaining to a

servicer's duty to respond to an NOE.  *See id.*

The plain language of 12 C.F.R. § 1024.35, however, does not support defendant's

argument.  12 C.F.R. § 1024.35(a)—the subsection of the RESPA regulations that explains

NOEs—states that "[a] servicer *shall* comply with the requirements of this section for *any*

written [NOE] from the borrower that asserts an error and that includes the name of the

borrower, information that enables the servicer to identify the borrower's mortgage loan account,

and the error the borrower believes has occurred."  12 C.F.R. § 1024.35(a) (emphasis added).

Furthermore, the RESPA subsection specifically relating to a servicer's obligation to respond to

NOEs states that "[e]*xcept as provided in paragraph (f) or (g) . . . a servicer must* respond to [an

NOE]" in one of the regulation's prescribed ways.  12 C.F.R. § 1024.35(a) (emphasis added).

By its plain language then, RESPA does not appear to exempt a servicer from responding to an

NOE if 12 C.F.R. § 1024.41(h)(4) applies.[3]

Therefore, I conclude that by the plain language of the RESPA regulations, defendant had

an obligation of some kind under that law to respond to plaintiffs' NOE.  Nevertheless, because I

find that the applicable regulation governing defendant's response only imposed a "good faith"

standard on defendant, see 12 C.F.R. § 1024.35(f)(2), and that plaintiffs have not alleged

sufficient facts that defendant violated that standard, see *supra*, I dismiss plaintiffs' RESPA

claim in any event.

**B.**   **Plaintiffs' Second Claim of Relief for "False Representation."**

Defendant next seeks to dismiss plaintiff's claim for fraudulent misrepresentation.  *See*

ECF No. 11 at 5–7.  Plaintiffs' fraudulent misrepresentation claim, which plaintiffs describe as a

claim for "false representation," attempts to hold defendant liable for misrepresenting the precise

nature of the appraisal on plaintiffs' home that defendant agreed to conduct after plaintiffs paid

defendant $200.00.  *See* ECF No. 8 ¶¶30–36.  However, because I find that plaintiffs have not

adequately pled a misrepresentation, or that their reliance on any alleged misrepresentation was

justified, I dismiss this claim of plaintiffs as well.

**1.**   **Colorado Law on Fraudulent Misrepresentation.**

Under Colorado law, a party must prove the following to establish a fraudulent

misrepresentation: "(1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance

---

[3] Defendant also contends that plaintiffs cannot establish a RESPA violation because they do not allege
that defendant "failed to comply with any of the timing requirements related to an appeal determination
under RESPA[.]"  ECF No. 11 at 4.  The Court finds this argument both beside the point because
plaintiffs are alleging errors with defendant's *NOE* response, not its appeal response, as well as
unconvincing given the absence of any relevant exemption from the NOE response requirements as
described *supra*.

on the material representation; (3) the plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages." *Nielson v. Scott*, 53 P.3d 777, 779–80 (Colo. App. 2002) (citing *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994)); *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1113 (D. Colo. 2010), *aff'd*, 566 F. App'x 681 (10th Cir. 2014).

While a promise concerning a future act alone is not actionable under a theory of fraudulent misrepresentation, "[a] promise concerning a future act . . . coupled with a present intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud." *See Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo. 1987) (quoting *Stalos v. Booras*, 528 P.2d 254, 256 (Colo. 1974)). Thus, "[w]here the fact allegedly misrepresented is not an existing fact, but rather, a promise to perform a particular act at a future time, the pleader must allege facts showing that, at the time of the promise, the speaker consciously harbored a present intention not to perform the promised act." *See Tara Woods*, 731 F. Supp. 2d at 1113 (citing *Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo. App. 2005)).

## 2. <u>Wells Fargo's Alleged Fraudulent Misrepresentation.</u>

In their Complaint, plaintiffs allege that defendant misrepresented the exact nature of a particular act (commissioning an appraisal) that it promised to perform at a future time (upon payment of $200.00). ECF No. 8 ¶¶30–34. Under Colorado law, plaintiffs must therefore allege sufficient facts suggesting that defendant intended not to perform that promised act at the time it made that promise. *See Tara Woods*, 731 F. Supp. 2d at 1113. I find that plaintiffs have done so here and that they have likewise complied with Rule 9(b)'s requirements for pleading intent. *See* ECF No. 8 ¶34 ("Wells Fargo did not have the appraisal conducted as they stated they would, nor did they intend to at the time the representation was made."); Fed. R. Civ. P.

9(b) ("[I]ntent . . . may be alleged generally."). I also find that plaintiffs have sufficiently complied with Rule 9(b)'s other requirements by "set[ting] forth the time, place and contents of the [alleged] false representation[], the identity of the party making the false statement[] and the consequences thereof.'" *See Koch*, 203 F.3d at 1236 (10th Cir. 2000); ECF No. 8 ¶¶30 –36; ECF No. 8-1 at 1.

Defendant nevertheless argues that plaintiffs' claim should be dismissed for two reasons. First, defendant argues that it made no misrepresentation to plaintiffs regarding the *kind* of appraisal it would order in exchange for $200.00 as part of plaintiffs' appeal. ECF No. 11 at 5; *see also* ECF No. 8-1 (Defendant's May 27, 2015 Letter to Plaintiffs).[4] Second, it argues that plaintiffs have not alleged sufficient facts to establish "materiality." ECF No. 11 at 5–6. I agree with defendant's first argument for dismissal.

As plaintiffs' admit, defendant merely stated in its letter requesting $200.00 that it would conduct an "appraisal" of plaintiffs' property. ECF No. 8 ¶15; ECF No 8-1 at 1 ("In order for us to reevaluate your loan for a modification based on a new property value, we'll need to request a new *appraisal* for your property.") (emphasis added). Admitting that this is what defendant conveyed to them, see ECF No. 8 ¶15, plaintiffs allege no facts that defendant stated or even suggested that it would otherwise conduct any specific *kind* of appraisal. *See generally* ECF No. 8. Instead, to support their claim that what defendant stated was misleading, plaintiffs allege that "Wells Fargo did not have the appraisal conducted as they stated they would[.]" ECF No. 8 ¶34. But plaintiffs have not alleged any facts that defendant made such a statement.

Furthermore, to support their allegation that defendant was misleading, plaintiffs argue in conclusory fashion that "[a]ny homeowner would reasonably assume" that defendant's promise

---

[4] The Court also finds that the parties can refer to this exhibit to the Amended Complaint for purposes of defendant's motion to dismiss without having to convert the motion to one for summary judgment. *See Gee*, 627 F.3d at 1186.

13

of an "appraisal" meant the "full appraisal" plaintiffs allegedly expected—that is, one including

an interior as well as exterior component.  *See* ECF No. 14 at 5–6.  However, without providing

any support for that assumption, or more importantly, any facts in their Amended Complaint to

back up their allegation that defendant's "Exterior-Only Inspection Residential Appraisal" was

*not* an "appraisal," see ECF No. 8 at ¶19, plaintiffs fail to persuade me that defendant

misrepresented the nature of the future act it agreed to conduct.

Accordingly, I reach two conclusions.  First, plaintiffs have not adequately stated that

defendant's promise of an "appraisal" was a misrepresentation.  And second, plaintiffs were not

justified in relying on defendant's statement in its May 27, 2015 letter about ordering an

"appraisal" as some kind of promise to plaintiffs that Wells Fargo would conduct a particular

*type* of appraisal the parties never apparently discussed.  *See* ECF No. 8 ¶35 (asserting in a

conclusory manner that "[t]he Franks' reliance was justified").  Therefore, I dismiss plaintiffs'

fraudulent misrepresentation claim.  *See Nielson v*, 53 P.3d at 779–80 (Colorado law on

fraudulent misrepresentations requires, among other things, both a misrepresentation and a "right

or justification in relying on the misrepresentation").

**C.**     **Plaintiff's Third Claim for a Determination of Interests under C.R.C.P. 105.**

The third claim of plaintiffs that defendant seeks to dismiss is plaintiff's claim for a

determination of interests under Colorado Rule of Civil Procedure 105.  *See* ECF No. 8 at ¶¶37–

39.  Plaintiffs argue that based on their allegations regarding defendant's legal errors leading up

to the foreclosure sale, plaintiffs are entitled to an invalidation of that sale and to being restored

as title owners of the property in question.  *Id*.  Defendant has two responses.  *See* ECF No. 11 at

6–7.  First, it argues that plaintiffs' "[c]laim is entirely derivate of [plaintiffs'] other claims" and

that it therefore fails for the same reasons plaintiffs' other claims should be dismissed.  *Id*.

Second, defendant argues that because defendant purchased plaintiffs property at the foreclosure sale, plaintiffs do not have any interest in the property to restore. *Id*. I agree with defendant's arguments and also dismiss plaintiffs' claim because it is entirely premised on why defendant's claim to title is inferior.

1. **C.R.C.P. 105.**

Colorado Rule of Civil Procedure 105 authorizes "[a]n action ... brought for the purpose of obtaining a complete adjudication of the rights of all parties thereto, with respect to any real property and for damages, if any, for the withholding of possession." *Hinojos v. Lohmann*, 182 P.3d 692, 696–97 (Colo. Ct. App. 2008) (citing C.R.C.P. 105(a)); *see also Armstrong v. JPMorgan Chase Bank Nat'l Ass'n*, No. 13-CV-02930-RBJ, 2014 WL 1363934, at *4 (D. Colo. Apr. 7, 2014), *aff'd sub nom. Armstrong v. JPMorgan Chase Bank Nat. Ass'n*, 633 F. App'x 909 (10th Cir. 2015). A plaintiff in such an action "bears the burden of establishing title in the property superior to that of the defendant." *Armstrong*, 2014 WL 1363934, at *4 (quoting *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986)). Furthermore, a plaintiff "may not capitalize on the weakness of the defendant's claim to title, but can succeed only by establishing the strength of his or her own claim to title." *Id*. (quoting *Hinojos*, 182 P.3d at 697). If a plaintiff merely "bases his claim solely on the weaknesses of the defendant's claim" to the property, dismissal for failure to state a claim is appropriate. *See id*.

2. **Plaintiffs' Quiet Title Claim.**

Here, as defendant points out, plaintiffs cannot establish their title to the property in question because defendant now owns it. *See* ECF No. 8 ¶23. Thus, plaintiffs instead base their quiet title claim purely on the weaknesses of defendant's claim to the property. *See* ECF No. 8 ¶¶37–39. For instance, plaintiffs argue that "deficiencies in [defendant's] protocol leading up to

the foreclosure sale" entitle plaintiffs "to an invalidation of the sale and restoration as title owners of the property." *Id.* ¶38.  Plaintiff's claim is therefore entirely based on why *defendant's* claim to the property's title is inferior and as such, Colorado law requires that I dismiss it. *See Armstrong*, 2014 WL 1363934, at *4; *Hinojos*, 182 P.3d at 697.

Furthermore, I find that dismissal is also appropriate because the "deficiencies" in defendant's foreclosure protocol that plaintiffs allege entitle them to quiet title are the same alleged facts that purport to support plaintiffs' RESPA and fraudulent misrepresentation claims. ECF No. 8 ¶¶37–38 (alleging that "[b]ased on the allegations made herein regarding deficiencies in protocol . . . [p]laintiffs are entitled to an invalidation of the sale and restoration as title owners of the property").  The Court, however, dismisses both of those claims. *See supra* Part III.A–B. Accordingly, I agree with defendant and find that plaintiffs cannot maintain this claim either because it is premised on the same underlying facts of those dismissed causes of action. *See, e.g.*, *Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034, 1042 (E.D. Mich. 2013) (dismissing a quiet title claim based on alleged errors with a foreclosure proceeding because the court had already dismissed plaintiff's other claim that were premised on those alleged errors); s*ee also* ECF No. 11 at 6 (arguing that plaintiffs' quiet title claim is "derivate of their other claims, and fails for the same reasons").

**D.**   **Plaintiffs' Fourth Claim for Injunctive Relief.**

Finally, defendant seeks to dismiss plaintiffs' fourth claim for injunctive relief.  ECF No. 11 at 7–8; ECF No. 19 at 4.  In that claim, plaintiffs assert that under Colorado Rule of Civil Procedure 65 they are entitled to two injunctive remedies: (1) an injunction to prevent defendant from filing a Forcible Entry and Detainer action; and (2) an injunction to prevent defendant from conveying the property in question to a third party.  ECF No. 8 at ¶¶40–44 (citing C.R.C.P. 65).

Defendant counters (1) that an injunction is not a separate cause of action, (2) that "[p]laintiffs'
request for an injunction . . . is not supported by any cognizable cause of action[,]" and (3) that
the two causes of actions plaintiffs do allege—violation of RESPA and false representation—
only allow for monetary damages as a remedy.  ECF No. 11 at 7–8.  Although in its last
argument defendant ignores plaintiffs' third claim under Colorado Rule of Civil Procedure 105,
plaintiffs do not even attempt to counter defendant's arguments for dismissal.  *See* ECF No. 19 at
4.  I find plaintiffs' silence telling.  Accordingly, agreeing with defendant's first two arguments, I
dismiss plaintiffs' last claim.

First, I find dismissal appropriate because a claim for injunctive relief is not a separate
cause of action.  *See, e.g.*, *Goryoka v. Quicken Loan, Inc*., 519 F. App'x 926, 929 (6th Cir. 2013)
(affirming the district court's dismissal of plaintiff's claim for injunctive relief because "these
requests are remedies and are not separate causes of action").  Second, I find dismissal
appropriate because plaintiffs' claim for injunctive relief is not supported by any cause of action.
That is, because I find dismissal appropriate for plaintiffs' other three claims, plaintiffs are left
with no cause of action upon which I could possibly grant injunctive relief.  *See, e.g.*, *Anderson
v. Gates*, 20 F. Supp. 3d 114, 128 (D.D.C. 2013), *aff'd sub nom. Anderson v. Carter*, 802 F.3d 4
(D.C. Cir. 2015) (dismissing a claim for injunctive relief because the court dismissed all of
plaintiffs' other claims upon which that relief could be based).  For those reasons, plaintiffs'
fourth claim for injunctive relief is dismissed as well.

## ORDER

For the reasons stated above, defendant's motion to dismiss [ECF No. 11] is GRANTED
and this civil action is DISMISSED WITH PREJUDICE.  As the prevailing party defendant is
awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 11th day of October, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge